**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| R.B., a minor, by her parent and natural Guardian KYLE HICKEY, in her own right, | : : : | No. 4:16-CV-01583 |
| Plaintiff, | : : | (Judge Brann) |
| v. | : : | |
| JENNIFER ENTERLINE, | : : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**JUNE 12, 2017**

Before the Court for disposition is Defendant Jennifer Enterline's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, this Motion will be granted.

## I.    BACKGROUND[1]

The factual scenario underlying this complaint, while not entirely uncommon, is undeniably tragic.

In September 2014, Plaintiff R.B. ("R.B."), a minor, was a member of a non-competitive cheerleading squad sponsored by Danville Area High School.[2] During

---

[1]    For purposes of this Motion to Dismiss, the allegations presented in Plaintiff's Complaint will be taken as true, and all inferences will be construed in the light most favorable to Plaintiff.

[2]    Compl. (ECF No. 2-4) ¶ 8, at 2.

that membership, R.B. was supervised and coached by Defendant Jennifer Enterline ("Enterline").[3] Enterline had been appointed as a cheerleading coach by the school board in March 2014.[4] Prior to this appointment beginning in the fall of 2014, Enterline had never before served as a cheerleading coach.[5]

While under the tutelage of Enterline, R.B. suffered the three injuries to her head which form the corpus of this suit.[6] On September 10, 2014, R.B. was injured twice during cheerleading practice. The first injury occurred when R.B. threw another cheerleader into the air and the other cheerleader's feet struck her in her sternum. The impact caused R.B. to fall to the ground and hit the back of her head on the mat.[7] She suffered immediate symptoms of dizziness, fogginess, headache pain, and being tired.[8] Enterline failed to notify R.B.'s parents or have her assessed by a trainer, and affirmatively returned R.B. to practice.[9]

R.B. then suffered a second head injury on September 10, 2014. Specifically, when another cheerleader sat on top of R.B.'s head during stunting

---

[3]    *Id.* ¶¶ 5–6, at 2.

[4]    *Id.* ¶ 5, at 2.

[5]    *Id.* ¶ 9, at 2.

[6]    *Id.* ¶ 12, at 3.

[7]    *Id.* ¶¶ 15-16, at 3.

[8]    *Id.* ¶ 16, at 2–3.

[9]    Compl. (ECF No. 2-4) ¶ 17, at 4.

practice, both she and R.B. fell to the ground.[10]  R.B. symptoms of dizziness, fogginess, headache pain, and being tired stemming from her previous injury increased.[11]  R.B. alleges, however, that Enterline again failed to notify R.B.'s parents or have her assessed by a trainer.[12]

The following day, on September 11, 2014, R.B. suffered her third and final injury under the supervision of Enterline when another cheerleader kicked her on the left side of the jaw.[13]  The impact of this kick caused R.B.'s head to move in a whiplash-like manner and forced her to lose consciousness.[14]  During both this and her injuries of the prior day, R.B. alleges that she suffered "concussion-like symptoms" in open view of Enterline.[15]  The next day, September 12, 2014, R.B. had difficulty comprehending information and felt "as if she was going to fall over."[16]  Her mother took her to the hospital for evaluation, and she was diagnosed with numerous serious and permanent bodily injuries stemming from her repeated injuries on September 10 –11, 2014.[17]

---

[10]   *Id.* ¶ 19, at 4.

[11]   *Id.*

[12]   *Id.* ¶ 20, at 4.

[13]   *Id.* ¶ 21–22, at 4.

[14]   Compl. (ECF No. 2-4) ¶ 22, at 4.

[15]   *Id.* ¶ 24, at 4.

[16]   *Id.* ¶ 25, at 5.

[17]   *Id.* ¶ 27, at 5.

This case was brought before the Court by Notice of Removal on July 29, 2016.[18]  The operative complaint contains three claims: (1) negligence, (2) a claim for violation of R.B.'s Fourteenth Amendment substantive due process rights to life, liberty, and bodily integrity under 42 U.S.C. § 1983 ("Section 1983"), and (3) a Section 1983 state created danger claim pursuant to the Fourteenth Amendment.[19]  Defendant Jennifer Enterline thereafter filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) which asserts that R.B.'s claims should be dismissed based on (1) failure to state a claim upon which relief can be granted, (2) qualified immunity, and (3) state governmental immunity.[20] This matter has since been fully briefed and is ripe for disposition.[21]

## II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[22]  "Rule 12(b)(6)

---

[18]   ECF Nos. 1 & 2.

[19]   ECF No. 2-4.

[20]   ECF No. 4.

[21]   ECF Nos. 5, 8, 9, 13, & 14.

[22]   *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[23] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[24]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[25]  In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[26]  More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[27]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[28]  "A claim has facial plausibility when the

---

[23]  *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[24]  *Neitzke*, 490 U.S. at 327.

[25]  Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[26]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

[27]  *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[28]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[30]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[31]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[32]  No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[33]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[34]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable

---

[29]  *Iqbal*, 556 U.S. at 678.

[30]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[31]  *Twombly*, 550 U.S. at 556.

[32]  *Iqbal*, 556 U.S. at 679.

[33]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[34]  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

to legal conclusions."[35]  "After *Iqbal*, it is clear that conclusory or 'bare-bones'

allegations will no longer survive a motion to dismiss."[36]  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not

suffice."[37]

As a matter of procedure, the United States Court of Appeals for the Third

Circuit has instructed that:

> Under the pleading regime established by Twombly and Iqbal, a court
> reviewing the sufficiency of a complaint must take three steps. First, it
> must tak[e] note of the elements [the] plaintiff must plead to state a
> claim. Second, it should identify allegations that, because they are no
> more than conclusions, are not entitled to the assumption of truth.
> Finally, [w]hen there are well-pleaded factual allegations, [the] court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.[38]

## III.  ANALYSIS

As previously noted, Plaintiff R.B.'s complaint comprises of three claims:

(1) a state law claim of negligence, (2) a Fourteenth Amendment substantive Due

Process claim for injury to bodily integrity under Section 1983, and (3) a

Fourteenth Amendment Due Process claim under the state created danger theory

pursuant to Section 1983.  My analysis of the plausibility of the claims, pursuant to

---

[35]  *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[36]  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[37]  *Iqbal*, 556 U.S. at 678.

[38]  *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

*Twombly/Iqbal,* will therefore begin with an analysis of R.B.'s negligence claim and proceed to analyze her Fourteenth Amendment claims *in tandem*.

### A.    Negligence

Based on the above allegations, R.B. first alleges a claim of negligence against Enterline.  Enterline, in turn, responds that she is immune under Pennsylvania's Political Subdivision Tort Claims Act.[39]  This Act specifies that local agencies and their employees are liable only for negligent acts that fall into one of the following categories: (i) vehicle liability; (ii) care, custody, or control of personal property; (iii) care, custody, or control of real property; (iv) dangerous conditions of trees, traffic controls, or street lights; (v) dangerous conditions of utility services facilities; (vi) dangerous conditions of streets; (vii) dangerous conditions of sidewalks; and (viii) care, custody, or control of animals.[40]  Courts extending this immunity have applied it to negligence claims against coaches for injuries resulting to student athletes.[41]

R.B. fails to allege facts bringing Enterline's conduct within one of the enumerated exceptions to the immunity statute.  Rather, R.B. attempts to circumvent this statute entirely by arguing that the Safety in Youth Sports Act

---

[39]    42 Pa.C.S.A. § 8541 *et seq.*

[40]    *Id.* § 8542.

[41]    *See, e.g., M.U. v. Downington High School East*, 103 F.Supp.3d 612, 626 (E.D.Pa. Apr. 27, 2015); *Cortese v. W. Jefferson Hills School District*, No. 53-C.D.-2008, 2008 WL 9404638, at *2 (Pa. Commw. Ct. Dec. 9, 2008).

("SYSA")[42] in some way abrogates the afforded immunity.[43] This argument

concerning the interplay between SYSA and the Tort Claims Act was addressed by

the Honorable Gerald J. Pappert of the United States District Court for the Eastern

District of Pennsylvania in *M.U. v. Downingtown High School East*.[44] In that case,

Judge Pappert wrote:

> M.U.'s citation to SYSA on the point of Tort Claims Act immunity is
> similarly misplaced. M.U. correctly points out that SYSA sets forth
> removal from play and return to play protocols for managing
> concussions and specifies that "any coach acting in accordance with
> [those protocols] shall be immune from civil liability." (citation
> omitted). Nevertheless, M.U.'s conclusion that because Reed
> did *not* follow the established procedures he is *not* immune from civil

---

[42] 24 P.S. § 5323.

[43] The SYSA specifically provides the following:

(c) REMOVAL FROM PLAY. A student who, as determined by a game official, coach from the student's team, certified athletic trainer, licensed physician, licensed physical therapist or other official designated by the student's school entity, exhibits signs or symptoms of a concussion or traumatic brain injury while participating in an athletic activity shall be removed by the coach from participation at that time.

(d) RETURN TO PLAY. The coach shall not return a student to participation until the student is evaluated and cleared for return to participation in writing by an appropriate medical professional. The governing body of a school entity may designate a specific person or persons, who must be appropriate medical professionals, to provide written clearance for return to participation. In order to help determine whether a student is ready to return to participation, an appropriate medical professional may consult any other licensed or certified medical professionals.

\* \* \*

(i) Civil Liability. – (1) Except as provided under paragraph (2), nothing in this act shall be construed to create, establish, expand, reduce, contract or eliminate any civil liability on the part of any school entity or school employee. (2) Any coach acting in accordance with subsections (c)[relating to removing a student from play] and (d)[relating to returning a student to play] shall be immune from any civil liability.

24 P.S. §5323 (c), (d), (i).

[44] *M.U.*, 103 F.Supp.3d at 630–31.

> liability is a classic case of the logical fallacy of denying the antecedent. Reed's lack of immunity under SYSA has no bearing on his immunity under the Tort Claims Act. This is especially evident because SYSA specifies that, other than extending immunity to coaches who follow the protocols, "nothing in this act shall be construed to create, establish, expand, reduce, contract or eliminate any civil liability on the part of any school entity or school employee." (citation omitted). SYSA, therefore, may extend immunity to those who are not otherwise immune, but it cannot abrogate immunity for those covered by the Tort Claims Act.[45]

I am in agreement with the sound reasoning of Judge Pappert that a proper reading of the SYSA does not abrogate immunity under the Tort Claims Act. R.B.'s negligence claim against Enterline will therefore be dismissed with prejudice.

In the alternative, R.B. argues that her negligence claim against Enterline should not be dismissed to the extent Enterline is sued in her individual, rather than official capacity. Enterline can only be held individually liable if willful misconduct on her part caused R.B.'s injuries.[46] The Pennsylvania Supreme Court has, however, recognized that willful misconduct is "a demanding level of fault."[47] In fact, that court has defined the term as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied."[48] In other

---

[45] *Id.*

[46] *M.U.*, 103 F.Supp.3d at 630 (citing *Pelzer v. City of Phila.*, 656 F.Supp.2d 517, 540 (E.D.Pa. 2009); *Wade v. City of Pittsburgh*, 765 F.2d 405, 412 (3d Cir. 1985)).

[47] *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006).

[48] *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (1994)(citations omitted).

words, "the term 'willful misconduct' is synonymous with the term 'intentional tort.' "[49]  Here, as in *M.U.*, there are no facts indicating that Enterline desired to bring about the injury suffered, and the facts of R.B.'s claim sound entirely in negligence.  However, unlike in *M.U.* where plaintiff's counsel essentially admitted amendment would be futile, there remains a possibility, albeit slight, that R.B. may be able to allege a plausible claim of willful misconduct against Enterline in her individual capacity.   As such, while R.B.'s claim for negligence against Enterline will be dismissed in its entirety, she will be given leave to amend her claim to the extent she can allege willful misconduct in accord with the above law.

### B.      Fourteenth Amendment Due Process Claims

Counts II and III of R.B.'s complaint are brought pursuant to 42 U.S.C. § 1983 ("Section 1983").  Section 1983 provides a cause of action to redress violations of federal law committed by state officials.[50]  Section 1983 is not a source of substantive rights; rather, it merely provides a remedy for violations of constitutional rights.[51]  To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by a person

---

[49]   *Id.* (internal citation omitted). *See also Bright v. Westmoreland Cnty.*, 443 F.3d 276, 287 (3d Cir. 2006); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001).

[50]   *See* 42 U.S.C. § 1983.

[51]   *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 815 (1985).

acting under color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law.[52] Here, R.B. alleges both a violation of her right to bodily integrity and a violation based on the state created danger doctrine in contravention of her rights under the Fourteenth Amendment.

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law."[53] In Count II of her complaint, R.B. first alleges a violation of her Fourteenth Amendment right to bodily integrity. While this right has indeed been recognized as a constitutional liberty interest protected by the Fourteenth Amendment Due Process clause, the Supreme Court of the United States held, in *DeShaney v. Winnebago County Department of Social Services,* that the state has no affirmative obligation to protect its citizens against private violence absent an indication that it "played a role in creating or enhancing the danger."[54] This language led to the adoption of the state created danger theory of liability, which R.B. alleges within Count II of her complaint. Her claim for a violation of her Fourteenth Amendment right to bodily integrity, therefore, necessarily relies upon the sufficiency of her state

---

[52] *See Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).

[53] U.S. Const. amend. XIV, § 1.

[54] *L.R. v. School Dist. of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016)(citing *DeShaney v. Winnebago Cnty Dept. of Soc. Servs.*, 489 U.S. 189, 195–96 (1989)).

created danger claim. My analysis will therefore be limited to the plausibility of R.B.'s claim under that theory.[55]

The state created danger theory recognizes that a constitutional violation can occur "when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.' "[56] To proceed with a claim under this theory, R.B. must plausibly allege four elements: (1) the harm to her was foreseeable and fairly direct; (2) a state actor (*i.e.*, Enterline) acted with a degree of culpability that shocks the conscience; (3) a relationship existed such that she was a foreseeable victim of the state's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor *affirmatively used* his or her authority in a way that created a danger to R.B. or that rendered her more vulnerable to danger than had the state not acted at all.[57]

> 1. R.B. Has Failed to Plausibly Allege Harm Which Was Foreseeable and Fairly Direct.

---

[55] *Dorley v. South Fayette Tp. Sch. Dist.*, 129 F. Supp. 3d 220, 231 (W.D.Pa. 2015)(Hornak, J.)(analyzing claims alleging harms to bodily integrity *via* the state created danger theory)(citing *Philips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008)).

[56] *Bright v. Westmoreland Cnty*, 443 F.3d 276, 281 (3d Cir. 2006)(quoting *Schieber v. City of Philadelphia*, 320 F.3d 409 (3d Cir. 2003)).

[57] *See Bright*, 443 F.3d at 281.

To plausibly allege a state created danger claim, R.B. must first show that the harm ultimately caused was foreseeable and fairly direct.[58] This element requires the plaintiff to allege "an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm."[59] The Court must also inquire as to whether the harm "is a 'fairly direct' result of the defendant's acts."[60] "This inquiry essentially asks whether the alleged misconduct and the harm caused were 'too attenuated' to justifiably hold the defendant liable."[61]

In the instant matter, R.B.'s complaint fails to allege that her harm resulting from repeated concussions was "foreseeable and fairly direct." In *Dorley v. South Fayette Township School District*, the Honorable Mark Hornak of the United States District Court for the Western District of Pennsylvania held that harm resulting from a football blocking drill was not "foreseeable and fairly direct" where the Complaint contained no facts indicating that the drill resulted in harm prior to plaintiff's injury, and there was no "other indicia of foreseeable likelihood of [p]laintiff's injury."[62] Judge Hornak wrote specifically that "if the coaches were

---

[58] *L.R.*, 836 F.3d at 245.

[59] *Phillips*, 515 F.3d at 238.

[60] *Id.*

[61] *D.N. ex rel. Nelson v. Snyder*, 608 F.Supp.2d 615, 625 (M.D.Pa. 2009) (quoting *Phillips*, 515 F.3d at 239).

[62] *Dorley*, 129 F.Supp.3d at 233.

not on some plausible notice of the concrete risk of a sufficiently serious injury, their actions would not satisfy the first prong of the test."[63]

Here, R.B.'s allegations similarly fail to meet this test. Specifically, while the complaint establishes that her injuries were a "fairly direct" result of the stunting activities, it nevertheless fails to establish foreseeability. First, as noted throughout this Memorandum Opinion, there are no factual allegations which establish that R.B. affirmatively informed Enterline of her injuries on September 10 and September 11, 2014, or that Enterline knew of any restrictions on R.B.'s participation. Enterline was not therefore on plausible notice of the concrete risk that a sufficiently serious injury would result to R.B. from repeated head injuries. Second, to the extent R.B. premises foreseeability of injury on the stunting activities themselves and not simply on her continued participation following injury, as in *Dorley*, R.B.'s complaint fails to demonstrate that first year coach Enterline had an awareness of prior incidents or injuries during such activities. R.B. has therefore failed to allege that her injury was foreseeable to Enterline.

      2.    <u>R.B. Has Failed to Plausibly Allege That Enterline Acted With A Degree of Culpability That "Shocks the Conscience."</u>

In *Sanford v. Stiles*, the United States Court of Appeals for the Third Circuit considered the standard of culpability required under this second element of the

---

[63]  *Id.* (citing *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013)).

state created danger theory.[64]  Specifically, the *Sanford* Court found that the level of culpability required to shock the conscience "increases as the time state actors have to deliberate decreases."[65]  In "hyperpressurized situations," a plaintiff must prove "intent to harm."[66]  As time to deliberate increases and allows for "unhurried judgments," the standard of culpability which must be proved decreases to "deliberate indifference."[67]  "Deliberate indifference" has, in turn, been defined as "a conscious disregard of a substantial risk of serious harm."[68]  It may, however, still exist without " 'actual knowledge by a risk of harm when the risk is so obvious that it should be known.' "[69]

Taken as true and viewed in the light most favorable to R.B., the allegations of the complaint establish that the "deliberate indifference" standard applies as the events encompassed do not present a "hyperpressurized situation."  R.B. specifically alleges that the events causing her injuries occurred from September 10, 2014 through September 11, 2014—a period undoubtedly long enough for unhurried judgment.  However, even under the lessened "deliberate indifference" standard of culpability, R.B.'s allegations at most sound in negligence, and are thus

---

[64]  *See generally Sanford*, 456 F.3d at 305–309.

[65]  *Id.* at 309.

[66]  *Id.*

[67]  *Id.*

[68]  *L.R.*, 836 F.3d at 246 (quoting *Ziccardi v. City of Philadelphia*, 288 F.3d 57, 66 (3d Cir. 2002)).

[69]  *Id.* (quoting *Sanford*, 456 F.3d at 309).

insufficient to "shock the conscience."[70]  I again note the absence of facts

demonstrating actual knowledge by Enterline of a risk of harm from R.B.'s

continued stunting injuries on September 10 and 11, 2014.  Rather, the only

allegations intimating actual knowledge are conclusory in nature and thus are not

entitled to an "assumption of truth."[71]  Those allegations include:

> 12. In open view of the defendant, Plaintiff sustained substantial trauma to
> her head and brain on three successive occasions on September 10-11, 2014
> while in the custody and care of Defendant.

> 13. After each of Plaintiff's three accidents, Defendant Enterline knew or
> should have been aware of plaintiffs injury and symptoms, yet failed to act
> reasonably and responsibly, for the reasons outlined specifically herein.[72]

In the absence of facts demonstrating actual knowledge of a risk of harm,

R.B. can still establish that Enterline's conduct "shocks the conscience" if "the risk

is so obvious that it should be known."[73]  The factual allegations of R.B.'s

Complaint, taken as true, fail to demonstrate such a risk.  In *Lavella v.

Stockhausen*, the Honorable Arthur Schwab of the United States District Court for

the Western District of Pennsylvania dismissed a state created danger claim

concerning cheerleading injuries brought pursuant to Section 1983.[74]  In that case,

---

[70]  *Shieber v. City of Philadelphia*, 320 F.3d 409, 419 (3d Cir. 2003)("[N]egligence is not enough to shock the conscience under any circumstances").

[71]  *Connelly*, 809 F.3d at 787.

[72]  Compl. (ECF No. 2-4) ¶¶ 12–13, at 3.

[73]  *L.R.*, 836 F.3d at 246 (quoting *Sanford*, 456 F.3d at 309).

[74]  Civil Action No. 13-CV-0127, 2013 WL 1838387 (W.D.Pa. May 1, 2013).

the plaintiff cheerleader had, on two separate occasions, been injured during "stunting," and received medical care and direction not to participate in practice.[75] At a "stunting" practice a week following her second injury, plaintiff was hit a third time in the head and suffered a concussion.[76]

In granting defendant cheerleading coach's motion to dismiss, Judge Schwab found that the allegations of plaintiff's complaint do not demonstrate that the defendant cheerleading coach's affirmative actions "shocked the conscience."[77] Specifically, the *Lavella* court found that, following the release of plaintiff to return to active stunting following her first injury, the only affirmative acts[78] of the defendant alleged by plaintiff were:

> having cheerleaders skip ImPACT testing, asking/having Plaintiff participate in stunting, and directing Plaintiff to serve as a back-base during a September 15, 2010, practice (Plaintiff continued practice but was later diagnosed with a concussion).[79]

The *Lavella* court characterized these acts as demonstrating that "[a]t most, there is an allegation that Defendant knew of "[P]laintiff's continuing headaches," the seriousness of concussions and additional risks from repeat concussions, and she

---

[75] *Id.* at *1.

[76] *Id.*

[77] *Id.* at *3.

[78] I note that, in Section III.B.3 of this Memorandum Opinion below, I find that R.B. has failed to allege affirmative acts by Enterline. For purposes of the instant analysis of this element, however, I will assume that her allegations can be considered affirmative acts as a matter of law.

[79] *Lavella*, 2013 WL 1838387, at *3.

"asked [P]laintiff to participate in stunting" in violation of verbal restriction given by plaintiff's mother.[80]  Judge Schwab concluded that "[d]efendant's actions, even when viewed in the light most favorable to Plaintiff, do not support a claim for state created danger in violation of 42 U.S.C. § 1983."[81]

R.B.'s allegations in the instant case similarly fail to allege Enterline's deliberate indifference, or "conscious disregard of a substantial risk of serious harm."  Specifically, examination of the operative complaint in the light most favorable to R.B. reveals significantly less flagrant conduct than that presented in *Lavella*.  First, as noted above, R.B. fails to demonstrate (beyond conclusory allegations) that Enterline had actual knowledge of any injury and symptoms, denied her medical care, or thereafter affirmatively forced her into "stunting" practice.  Second, while the dangers of repeated head injuries in the context of athletics is increasingly becoming common knowledge, Enterline had no knowledge of those dangers because she did not attend prior requisite training.  Third and finally, R.B.'s attempt to distinguish *Lavella* on the basis of the subsequently passed SYSA requirement of concussion and head training is unpersuasive, as Section 1983 does not provide a remedy for violations of state

---

[80]  *Id.*

[81]  *Id.*

laws.[82]   Taken as a whole, therefore, the allegations contained within R.B.'s Complaint fall short of the behavior exhibited in high school concussion cases that survived the motion to dismiss stage.[83]

### 3. R.B. Has Failed to Plausibly Allege An Affirmative Use of Authority Creating or Increasing Danger.

This fourth and final element of the state created danger theory—an affirmative use of authority— is typically the most challenging analytically.  Because the analysis between "passive inaction" and "affirmative action" is sometimes reminiscent of getting lost in a house of mirrors, the Third Circuit recently provided the following guidance:

> Rather than approach this inquiry as a choice between an act and an omission, we find it useful to first evaluate the setting or the "status quo" of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo. This approach, which is not a new rule or concept but rather a way to think about how to determine whether this element has been satisfied, helps to clarify whether the state actor's conduct "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all."[84]

---

[82]  *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1375–76 (3d Cir. 1992) (en banc ); *see also M.U.*, 103 F.Supp.3d at 625 (collecting cases).

[83]  *See, e.g., Alt v. Shirey*, Civil Action No. 11–CV–0468, 2012 WL 726579, at *12 (W.D.Pa. Feb. 7, 2012), *report and recommendation adopted*, 2012 WL 726593 (W.D.Pa. Mar. 1, 2012) (defendants were aware that plaintiff had sustained several head injuries and not only put him back into the game, but also ordered him to deliver a substantial hit to an opposing player); *Mann v. Palmerton Area Sch. Dist.*, 33 F.Supp.3d 530, 539 (M.D.Pa. 2014) (defendants forced plaintiff to continue football practice after he was hit in the head, despite plaintiff exhibiting erratic behavior and telling the coaching staff that he felt numb and disoriented).

[84]  *L.R.*, 836 F.3d at 243.

Here, R.B. fails to allege affirmative conduct by Enterline. Rather, R.B.'s allegations include that Enterline (1) *failed* to notify her parents of her head injury, (2) *failed* to have her assessed by a trainer or other medical personnel, and (3) affirmatively returned plaintiff to practice the following day do not represent the alteration of the *status quo* of cheerleading practice.[85] The first two alleged acts are, in the absence of factual allegations demonstrating Enterline's knowledge, simply inaction. R.B.'s third alleged affirmative use of authority by Enterline— affirmatively returning her to practice following her first injury on September 10th and on the following day September 11th—similarly misses the mark. Specifically, while this allegation's language suggests affirmative conduct, there is a paucity of any averment establishing Enterline's knowledge of the injury, R.B.'s temporary lack of participation thereafter due to injury, and any indication that Enterline "returned" R.B. to practice against her will and protest. Furthermore, while the Complaint alleges that Enterline "returned" R.B. to practice on September 11, 2014 following her injuries the previous day, there are no factual allegations indicating that Enterline in some way overrode the decision of R.B. and her parents to participate in practice and effectively forced her participation.

In *Yatsko v. Berezwick*, the Honorable James M. Munley of this Court dismissed the complaint of a student athlete where the sole allegations of conduct

---

[85]  Compl. (ECF No. 2-4) ¶¶ 17, 23, at 4.

by the defendant included *failures to act*, rather than *affirmative acts*.[86]

Concerning this distinction, Judge Munley wrote:

> Here, however, the failures of the teachers were ones of omission; they did not prohibit plaintiff from playing in a basketball game after she injured herself. Such action, while inadvisable, does not constitute the sort of egregious behavior that rises to the level of a substantive due process violation.[87]

Judge Munley ultimately concluded that while "[t]he facts alleged by the plaintiff resulted in a tragic outcome; we cannot, however, find a constitutional violation in conduct by a state actor that, as alleged, rises only to the level of negligence."[88] Here, like in *Yatsko*, the complaint is devoid of facts demonstrating affirmative conduct by Enterline.[89] Therefore, because the affirmative conduct requirement directs courts "to distinguish cases where . . . officials might have done more . . . [from] cases where . . . officials created or increased the risk itself,"[90] R.B.'s failure to satisfy this element of the state created danger theory is dispositive.

4.    Defendant Enterline's Defense of Qualified Immunity

---

[86]   *Yatsko v. Berezwick*, Civil Action No. 06-CV-2480, 2008 WL 244503, at *7 (M.D.Pa. June 13, 2008)(Munley, J.).

[87]   *Id.* at *6.

[88]   *Id.*

[89]   *See also M.U.*, 103 F.Supp.3d at 625 (concluding that soccer coach's actions were of "omission in that he failed to take her out of the game, failed to evaluate her for a concussion, and failed to send her for a medical evaluation").

[90]   *Morrow v. Balaski*, 719 F.3d 160, 179 (3d Cir. 2013).

Enterline claims that, even if R.B. were successful in alleging her Fourteenth Amendment claims, she would nevertheless be entitled to their dismissal on the basis of qualified immunity. The purpose of qualified immunity is to protect government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[91] In *Mullenix v. Luna*, the Supreme Court of the United States emphasized the wide breath of qualified immunity's protection.[92] The *Mullenix* Court specifically stated that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[93] Furthermore, qualified immunity is intended to be an immunity from suit, rather than simply a defense to liability.[94] This means that its protection is effectively lost if a defendant is required to go to trial.[95]

Courts employ a two-part test to determine whether a defendant is entitled to the protections of qualified immunity. First, the court must consider whether the facts that the plaintiff has demonstrated make out a violation of a constitutional right.[96] If the plaintiff has satisfied that inquiry, the court must next decide

---

[91] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[92] *Mullenix v. Luna*, 136 S.Ct. 305, 306 (2015).

[93] *Id.*

[94] *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001).

[95] *Id.*

[96] *See id.*, 533 U.S. at 201.

whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct.[97]  The Supreme Court has stressed that there is no mandatory order in which to consider the two prongs of this qualified immunity analysis.[98]

In determining whether a constitutional right was clearly established, a broad and generalized declaration that a clearly established federal right was violated is insufficient.[99]  Rather, in order for a constitutional right to be 'clearly established,' "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right."[100]  Put another way, for the purposes of the qualified immunity analysis, a right is considered clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[101]

---

[97]  *See id.*

[98]  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

[99]  *See Anderson v. Creighton*, 483 U.S. 632, 640 (1987) (holding that the mere assertion that the Fourth Amendment prohibits warrantless searches without probable cause and exigent circumstances was not enough to demonstrate that the right was clearly established).

[100]  *Id.* at 640–41.

[101]  *Saucier*, 533 U.S. at 202.

In *L.R. v. School Dist. of Philadelphia*, the Third Circuit discussed the necessary interplay between the determination of qualified immunity and sufficiency of facts within a complaint.[102]  Specifically, the *L.R.* Court stated:

> [W]hether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." (citation omitted). Thus the sufficiency of L.R.'s pleading is both "inextricably intertwined with" and "directly implicated by" Littlejohn's qualified immunity defense. (citation omitted)[103]

As explained above, R.B. has in the instant matter failed to allege a plausible federal claim under Section 1983.  Therefore, in recognition of the Third Circuit's directive that the determination of qualified immunity necessarily requires definition of the precise contours of the right alleged to have been violated,[104] I will defer deciding this issue until a sufficiently pled constitutional claim is established in an amended pleading.[105]  This procedure will allow the Court to examine the issue "in light of the specific context of the case, not as a broad general proposition."[106]

---

[102]  *L.R.*, 836 F.3d at 241.

[103]  *Id.*

[104]  In *Zaloga v. Borough of Moosic*, the Third Circuit made explicit that "it is not sufficient to conclude" that a generalized right against government interference with a protected right exists. Rather, the district court "must attend to context" and "consider . . . the circumstances confronting [the state actor]" at that particular moment in time. 841 F.3d 170, 175 (3d Cir. 2016).

[105]  *See Dorley*, 129 F.Supp.3d at 229 ("The Court concludes that application of that doctrine will be far better measured against more precisely articulated claims after any potential amendment of the Complaint.").

[106]  *Mullenix*, 136 S.Ct. at 308.

## C.    Leave to Amend

Federal Rule of Civil Procedure 15 sets forth the mechanisms for amending a pleading prior to trial. Section 15(a)(1) applies to amendments as a matter of course.  Amendment as a matter of course is inapplicable here, because Plaintiff elected not to make such an amendment within the two time periods provided for in that section.  Section 15(a)(2), entitled "Other Amendments," explains that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

The Third Circuit has "previously discussed when a court may deny leave to amend under Rule 15(a)(2)."[107]  In *Shane v. Faver*, for example, then Circuit Judge Samuel A. Alito, Jr. stated that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[108]  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."[109]  "In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."[110]

---

[107]  *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008).

[108]  213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (Alito, J.).

[109]  *Shane*, 213 F.3d at 115.

[110]  *Id.*

"Moreover, substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend."[111]  "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted."[112]  "Specifically, we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories."[113]

"The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[114]  "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment."[115]  For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend."[116]

In the instant case, I note the perilous path R.B. must walk to allege a plausible Fourteenth Amendment claim under the state created danger theory,

---

[111] *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

[112] *Id.*

[113] *Id.*

[114] *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518 (3d Cir. 1988).

[115] *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (quoting Foman, 371 U.S. at 182).

[116] *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (citing 6 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1487).  *See also Vosgerichian v. Commodore Int'l Ltd.*, Civil Action No. 92-CV-4867, 1998 WL 966026, at * 3 (E.D. Pa. Nov 6, 1998), *aff'd sub nom Vosgerichian v. Commodore Int'l*, 191 F.3d 446 (3d Cir. 1999).

bring any such constitutional violation outside the ambit of qualified immunity, and allege willful conduct necessary to sustain a negligence claim against Enterline.[117] Nevertheless, other courts within this Circuit have granted leave when faced with similar factual circumstances.[118] In adopting that pattern, however, I caution R.B. that if she cannot allege sufficient facts to state a plausible claim for relief under prevailing law, she should refrain from filing an amended complaint in this action.[119]

## IV.    CONCLUSION

Based on the above reasoning, Defendant Jennifer Enterline's Motion to Dismiss is granted, and Plaintiff R.B.'s complaint is dismissed in its entirety. Plaintiff R.B. is, however, granted leave to amend her complaint **within twenty**

---

[117] *See, e.g, Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015)("[C]ourts that have found colorable constitutional violations in school-athletic settings did so where state actors engaged in patently egregious and intentional misconduct"); *Hinterberger v. Iroquois Sch. Dist.*, 548 F.App'x. 50, 54 (3d Cir. 2013)(holding that cheerleading coach was entitled to qualified immunity on substantive due proves claim brought under the state created danger theory); *Vicky M. v. Ne. Educ. Intermediate Unit*, 689 F.Supp.2d 721, 741 (M.D.Pa. 2009)("[E]vidence which demonstrates deliberate indifference fails to establish the type of willful misconduct necessary to pierce [Tort Claims Act] immunity").

[118] *See, e.g., M.U.*, 103 F.Supp.3d at 634; *Dorley,* 129 F.Supp.3d at 249; *Lavella*, 2013 WL 1838387, at *4; *Yatsko,* 2008 WL 2444503, at *6.

[119] *See Keister v. PPL Corp.*, 318 F.R.D. 247, 262 (M.D. Pa. 2015) (Brann, J.) (imposing reasonable attorney's fees under Federal Rule of Civil Procedure 11, where "the allegations in Plaintiff's Second Amended Complaint were unsupported at the time that [counsel for Plaintiff] wrote them, and were unlikely to ever gain factual support during the course of discovery, because they simply were inaccurate"), *aff'd*, —— Fed. Appx. ——, 2017 WL 383366 (3d Cir. 2017) (Fisher, J.).

**one (21) days** of this Memorandum Opinion pursuant to Federal Rule of Civil Procedure 15, and in accordance with the above outlined deficiencies.

If no amended complaint is filed by that date, the action will be summarily dismissed pursuant to Fed. R. Civ. P. 41(b).

An appropriate Order follows.


BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge