# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R.B., *a minor, by her parent and natural guardian Kyle Hickey, in her own right,* | No. 4:16-CV-1583 |
| | (Judge Brann) |
| Plaintiff. | |
| v. | |
| JENNIFER ENTERLINE, | |
| Defendant. | |

## MEMORANDUM OPINION

### JANUARY 19, 2018

Sir Winston Churchill said, "To improve is to change; to be perfect is to change often." It is in the spirit of this concept that I change my prior holding in this matter, in light of recent appellate court precedent.[1] The ultimate outcome of this case, however, remains unchanged.

## I.   BACKGROUND

Plaintiff, Ryleigh Benjamin[2], now at the age of majority, but a minor at the time of the incidents in question, filed a complaint that was previously dismissed with leave to amend. An amended complaint,[3] together with a renewed motion to

---

[1]   *See Mann v. Palmerton Area School Dist.*, 872 F.3d 165 (2017).

[2]   Hereinafter "Benjamin."

[3]   Benjamin's counsel filed the amended complaint, then moved with withdraw as counsel. Ms. Benjamin, and her mother, Kyle Hickey, are proceeding *pro se*.

dismiss from Defendant, Jennifer Enterline[4], Benjamin's former cheerleading coach, were subsequently filed and the motion is now ripe for disposition. For the reasons that follow, the action will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

### A. Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which relief may be granted,[5] a court assumes the truth of all factual allegations in a plaintiff's complaint and draws all inferences in favor of that party;[6] the Court does not, however, assume the truth of any of the complaint's legal conclusions.[7] If a complaint's factual allegations, so treated, state a claim that is plausible – *i.e.*, if they allow the court to infer the Defendant's liability – the motion is denied; if they fail to do so, the motion is granted.[8]

### B. Facts Alleged in the Amended Complaint

Accepting the facts alleged in the amended complaint as true for the purposes of this motion, I note, as follows.

---

[4] Hereinafter "Enterline."

[5] Federal Rule of Civil Procedure 12(b)(6).

[6] *Phillips v. Cnty. Of Allegheny*, 616 F.3d 224, 228 (3rd Cir. 2008).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

[8] *Id.*

Enterline is the cheerleading coach for Danville Area High School. Enterline has had training for recognition of, and care for, concussions.[9] As such, Enterline knew or should have known that cheerleaders could sustain head injuries that lead to concussions.[10] Although cheerleading falls under the ambit of the Safety in Youth Sports Act, Enterline was not trained pursuant to its requirements.[11]

In September 2014, Benjamin was a fifteen year old member of the non-competitive cheerleading squad.[12] On September 10, 2014, Benjamin fell and struck her head on the ground during cheerleading practice.[13] Benjamin began experiencing concussive symptoms, including dizziness, fogginess, headache, and tiredness.[14] Enterline completed an injury report, in which she noted that "while basing a new stunt, Ryleigh's flyer's foot hit Ryleigh in the chest - knocking Ryleigh down - (no one else hit ground.)"[15] Enterline's report continued that she had Benjamin "[sit] it out for a few minutes."[16] Enterline did not notify

---

[9] ECF No. 17 at ¶ 10.
[10] ECF No. 17 at ¶ 13 and 16.
[11] ECF No. 17 at ¶ 15-30.
[12] ECF No. 17 at ¶ 14.
[13] ECF No. 17 at ¶ 33.
[14] ECF No. 17 at ¶ 35.
[15] ECF No. 17 at ¶ 35.
[16] ECF No. 17 at ¶ 36.

Benjamin's parents of the injury nor did she have Benjamin assessed by the school's athletic trainer or other medical personnel.[17]

Later during that same practice, Benjamin sustained a second head injury after another "cheerleader/student sat on the top of the minor Plaintiff's head from which both fell, causing additional impact and injury to Plaintiff's head when both fell to the ground."[18] Benjamin experienced increased dizziness, fogginess, headache and tiredness.[19] Enterline did not document this second incident.[20]

The following day, September 11, 2014, Enterline returned Benjamin to practice, during which "another cheerleader/student kicked the minor Plaintiff on the left side of her jaw, causing her head to move in a whiplash-type manner and loss of consciousness."[21] Enterline wrote an injury report

> Description of Incident: While basing, Ryleigh lost hold of her flywer's foot. Flyer's foot came down and got Ryleigh in the jaw. (No Blood - Slight red mark.)
> Action Taken: Had cheerleader sit - offered ice pack - refused. Contintued last 15 min. of practice.
> Treatment Provided by: ~~Coach~~. *After speaking with Ryleigh's mother on 9/12/14 - possible concussion - taking her to be seen at GMC.[22]

---

[17] ECF No. 17 at ¶ 38.
[18] ECF No. 17 at ¶ 40-41.
[19] ECF No. 17 at 42.
[20] ECF No. 17 at 43.
[21] ECF No. 17 at 45.
[22] ECF No. 17 at ¶ 46.

## C. Count I: Negligence and Willful Misconduct

In the amended complaint, Benjamin reframed her negligence claim as one sounding in willful misconduct in an effort to skirt the governmental immunity imposed by Pennsylvania's Political Subdivision Tort Claims Act. This strategy has worked - at least for the purposes of a Rule 12(b)(6) motion and its attendant plausibility standard.

School districts are immune from liability under Pennsylvania's governmental immunity law.[23] So to is Enterline if she is, in fact, an employee of the school district as plead in the amended complaint.[24] Although Enterline would be immune for negligence, as provided by the statute,[25] that immunity does not extend to "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct."[26] Although Benjamin attempts to couch her negligence claims in terms of willful misconduct to escape statutory immunity by alleging that Enterline is an untrained coach who refused mandatory concussion training,[27] those allegations still sound in negligence, as opposed to the intentional tort–like conduct required to lose immunity.

---

[23] 42 Pa. C.S.A. § 5841 *et seq.*

[24] *Id.* at § 8545.

[25] *Id.* at § 8542(a)(2).

[26] *Id.*

[27] Amended Complaint., ECF No. 17 at ¶ 62.

'Willful misconduct,' within meaning of Pennsylvania Political Subdivision Tort Claims Act, is synonymous with term intentional tort.[28] Governmental immunity will not bar claims against an employee of a local agency when his actions constitute willful misconduct. "Willful misconduct" is construed to mean willful misconduct aforethought and is synonymous with intentional tort. More specifically, "willful misconduct" occurs when the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue.[29]

An example of the willful misconduct required to lose immunity from the Pennsylvania Political Subdivision Tort Claims Act is *Estate of Massey v. City of Philadelphia.*[30] In that case, the estate of sixth-grade student, who died after suffering an asthma attack at school, sufficiently alleged willful misconduct on the part of the public school district and the school principal as required to overcome their immunity with respect to wrongful death and survival action claims. The estate alleged that the school did not permit the student to use her medication without a nurse present or to leave school to obtain medical care despite the lack of qualified personnel to provide medical assistance. There was no nurse on duty

---

[28] *See Allen v. District Attorney's Office of Philadelphia*, 644 F.Supp.2d 600, (E.D.Pa.2009).
[29] *Orange Stones Co. v. City of Reading*, 87 A.3d 1014 (Cmwlth. Ct. 2014).
[30] 118 F.Supp.3d 679 (E.D.Pa.2015).

during student's asthma attack, and the principal was personally involved in the alleged conduct.[31]

Here, there are no allegations that Enterline was acting in a manner that evinces an intent for Benjamin to suffer a concussion. Enterline's actions sound in negligence, but simply do not rise to the level of intentional conduct necessary to lose immunity under the Act at issue.

Finally, as discussed in my June 12, 2017 opinion, Benjamin's reliance on the Safety in Youth Sports Act is misplaced. That Act merely expands immunity to coaches acting in accordance with it. The Act does not eliminate the immunity under the Tort Claims Act for those who do not act in accordance with it.[32]

### D. Count II: 42 U.S.C. § 1983 - 14th Amendment and Count III: 42 U.S.C. § 1983 - State Created Danger[33]

In order for Benjamin to prevail under 42 U.S.C. § 1983, she must establish two elements: first, that the conduct complained of was committed by a person acting under color of state law; and second, that the conduct deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.[34]

---

[31] *Id.*

[32] *See, e.g. M.U. v. Downington High School East,* 103 F. Supp. 3d 612, 630-31 (E.D. Pa. Apr. 27, 2015) (Pappert, J.).

[33] As discussed in my prior opinion, these two counts allege the same claim.

[34] *See Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir. 1993).

The United States Court of Appeals for the Third Circuit accepted the state created danger theory of liability as an actionable claim in 1996. Later that year, the Third Circuit in *Kneipp v. Tedder*, formulated a four-part test for applying the state created danger theory of liability.[35] The elements as defined by *Kneipp* are:

1. the harm ultimately caused was foreseeable and fairly direct;
2. the state actor acted in willful disregard for the safety of the Plaintiff;
3. there existed some relationship between the state and the Plaintiff;
4. the state actor used his or her authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.[36]

Over the past twenty years, the Third Circuit has further refined each of these four elements as follows:

*Element 1 - The harm ultimately caused was foreseeable and fairly direct.*

The first element "requires that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions."[37]

*Element 2 - A state actor acted with a degree of culpability that shocks the conscience.*

The Third Circuit expanded the second element to include a "conscience shocking" test after the United States Supreme Court clarified the standard of

---

[35] *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996).

[36] *Id.* at 1208.

[37] *Morse v. Lower Merion School District*, 132 F.3d 902, 908 (3d Cir. 1997).

culpability on the part of law enforcement for violating substantive due process in a pursuit case.[38] Justice Davis Souter, writing for the Supreme Court ni *City of Sacramento v. Lewis*, stated: "[w]e have emphasized time and again that "t[he touchstone of due process is protection of the individual against arbitrary action of government."[39] "Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"[40] "To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience."[41] "While the measure of what is conscience shocking is no calibrated yard stick, it does, as Judge [Henry] Friendly put it, 'poin[t] the way.'" [42] "It should not be surprising that the constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."[43] "Thus, we have made it clear that the due process

---

[38] *City of Sacramento v. Lewis*, 523 U.S. 833 (1997) (Souter, J).
[39] *Id*. at 845 (internal citations omitted).
[40] *Id*. at 846 (internal citations omitted).
[41] *Id*.
[42] *Id*. (internal citations omitted).
[43] *Id*. at 848.

guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."[44]

Justice Souter continued, "[we] have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."[45] "It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."[46] "Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as 'recklessness' or 'gross negligence.'"[47] "To be sure, we have expressly recognized the possibility that some official acts in this range may be actionable under the Fourteenth Amendment, and our cases have compelled recognition that such conduct is egregious enough to state a substantive due process claim []."[48] "Rules of due process are not, however, subject to

---

[44] *Id*.

[45] *Id*. at 849 (internal citations omitted).

[46] *Id*. (internal citations omitted).

[47] *Id*. (internal citations omitted).

[48] *Id*.

mechanical application in unfamiliar territory."[49]  "Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking."[50]  It is to be tested by "an appraisal of the totality of facts in a given case."[51]  "As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical."[52]

The Third Circuit further explained that the amount of time the state actor has to deliberate is also instructive to determine when his or her actions are conscience shocking.  Where an official does not need to make a decision in the heat of the moment, but still must act with some urgency, the mental state necessary is "proof that the defendants consciously disregarded, not just a substantial risk, but a great risk that serious harm would result."[53]

*Element 3 - A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a*

---

[49] *Id*. at 850.

[50] *Id*.

[51] *Id*.

[52] *Id*. at 851 (internal citations omitted).

[53] *Rivas v. City of Passaic*, 365 F.3d 181, 195-95 (3d Cir. 2004) (internal citations omitted).

*discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general.*

The plaintiff must be a foreseeable victim.[54] "[I]t is not enough to show that the state increased the danger of harm from third persons; the § 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff."[55] "In other words, the state's actions must evince a willingness to ignore a foreseeable danger or risk."[56]

*Element 4 - A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.*

*Morse v. Lower Merion School District,* also clarified the fourth element, stating "the dispositive factor appears to be whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or an omission."[57] "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."[58] This element asks "whether the state actor used

---

[54] *Morse, supra*, 132 F.3d at 912.

[55] *Id.* at 910 (internal citations omitted).

[56] *Id.*

[57] *Morse*, 132 F.3d at 915.

[58] *Bright v.Westmoreland County,* 443 F.3d 276, 282 (2006).

his or her authority to create an opportunity, which otherwise would not have existed, for the specific harm to occur."[59]

"While these four elements of a claim under the state-created danger theory of § 1983 liability are well established in this Circuit, their application in the context of high school sports is a relatively recent phenomenon."[60] District courts have held on both sides of the issue as to whether an injured high school sports player has stated a claim under the state created danger theory of liability.

I held in my June 12, 2017 Memorandum Opinion that Benjamin had not stated a claim as to the first, second, and fourth elements. However, I revise my holding today, in light of the Third Circuit's September, 22, 2017 opinion in *Mann v. Palmerton Area School District*.[61]

Our Court of Appeals in *Mann*, although addressing the issue on a motion for summary judgment, and in the context of football, changed the game, in this area of the law, so to speak. Sheldon Mann was a football player for the Palmerton Area School District who experienced a "hard hit" during a practice in November 2011.[62] Although others present thought Mann may be experiencing concussion like symptoms, his coach returned Mann to practice and he received yet another

---

[59] *Rivas*, 365 F.3d at 197.

[60] *M.U. v. Downingtown High Sch. East*, 103 F. Supp. 3d 612, 622 (E.D. Pa. 2015) (Pappert, J.).

[61] 872 F.3d 165 (2017) (Vanaskie, J.).

[62] *Id.*

"violent collision," after which he was removed from practice.[63] The District Court held, and the Court of Appeals affirmed, that the coach could be found to be culpable under the state created danger theory of liability by a jury, but that the constitutional right to protection from "deliberate exposure to a traumatic brain injury after exhibiting signs of a concussion in the context of a violent contact sport" was not clearly established in 2011. In light of this subsequent and binding decision, I alter my prior holding that Benjamin has not stated a claim in the case at bar. Following *Mann*, it is plausible that she has stated a claim of state created danger under the Fourteenth Amendment.

In *Mann*, the defendant coach testified at his deposition that he had been trained to identify the symptoms of a concussion and that the first hit Sheldon experienced could have been a symptom. Based on this, it was held that the Mann plaintiffs set forth evidence sufficient to support a jury finding as to the first element - the harm was foreseeable and fairly direct.[64] Similarly, Benjamin alleges that Enterline had been trained to identify the symptoms of a concussion. She maintains that discovery would unearth whether or not Enterline had recognized that Benjamin's first fall to the ground hitting her head could indicate a concussion.

---

[63] *Id.*

[64] *Id* at 171.

In *Mann* our Court of Appeals found that by failing to remove Sheldon Mann from practice and instead requiring him to continue practice, a jury could find the coach was 'deliberately indifferent' to the risk posed by sustaining a second substantial blow to the head.[65] I now find that Plaintiff has stated a plausible claim as to the second element of the *Kneipp* test, as she has alleged facts that Enterline had time to consider whether or not to remove Benjamin from practice for examination by the school's athletic trainer. Enterline instead had Benjamin merely sit out for a few minutes then return to practice. Again, discovery would reveal if Enterline had the mental state necessary that she consciously disregarded, not just a substantial risk, but a great risk that serious harm would result. Which is to say whether she was deliberately indifferent to the risk of harm.

Enterline does not challenge the third element - the relationship between the state and Benjamin. Not unlike the *Mann* defendants, in athlete-coach relationship, this element is easily established.

Finally, the fourth element, whether Enterline affirmatively took action that created danger to Benjamin, states a plausible claim for relief - but by the thinnest margin. *Mann* held that a reasonable juror could find that the coach there was aware of the first blow to Sheldon Mann's head and the resulting concussive

---

[65] *Id.* at 172.

symptoms, and by sending Sheldon back into practice rendered him vulnerable to harm. Although seemingly less likely than in *Mann*, discovery here may show that Enterline may have recognized symptoms of a concussion in Benjamin that rendered her more susceptible to harm by having her continue to practice.

However, despite reconsidering my June 2017 holding in light of *Mann*, the issue of qualified immunity still remained an open question in this matter until today. The ultimate outcome for Benjamin remains the same, as I find that this constitutional violation did not become clearly established law in this Circuit until *Mann v. Palmerton Area School District* was decided in September 2017.

Consequently, I am compelled to consider what was firmly established law during the time of the events in question — September 10 and 11, 2014.

*Qualified Immunity*

"Clearly established law for purposes of qualified immunity means that 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[66] "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."[67]

---

[66] *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017), as amended (Sept. 22, 2017) *citing Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).
[67] *Id.*

In this case, the specific context is whether a cheerleading coach, lacking in concussion training, who fails to send a student athlete to an athletic trainer or other medical personnel after the athlete falls during practice, violated that student's constitutional rights for not sending the athlete for concussion screening. I am aware of no binding case decided prior to September of 2014 that held that the coach violated the athlete's constitutional rights by not sending her for medical evaluation.

## III. CONCLUSION

For all of the foregoing reasons, Enterline is immune from liability for both the state law and federal law claims. Accordingly, this action must be dismissed.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge